UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ELMUTAZ OSMAN,

            Plaintiff,

v.                                    No. 20-cv-11356-NMG

WILLIAM DWAN, EDWARD GLEESON,
MICHAEL O'HARA, THE CITY OF
BOSTON, and JOHN DOES 1-5,

            Defendants.

## <u>REPORT AND RECOMMENDATION ON DEFENDANTS'</u><br><u>MOTIONS TO DISMISS</u>

CABELL, U.S.M.J.

    Plaintiff Elmutaz Osman has brought several claims against eight Boston Police Department (BPD) officers and the City of Boston (the City) for allegedly subjecting him to a baseless car stop and malicious prosecution. The City (D. 12) and three of the officers, including Detective Michael Dwan (D. 14), Officer Edward Gleeson (D. 16) and Lieutenant Michael O'Hara (D. 18), move to dismiss or partially dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1] For the reasons that follow, I recommend that the City's motion be <u>allowed</u> and that each of the three officers' motions be <u>allowed</u> in part and <u>denied</u> in part.

---

[1] The other five officers have not yet been identified or served. None of the motions seek relief on their behalf and the court does not address the merits of any claims against them.

I.  **FACTUAL ALLEGATIONS**

The factual allegations are taken from the plaintiff's Second Amended Complaint (D. 7), referred to as the "complaint" for brevity, and are taken as true for purposes of the present motions.

The plaintiff is a Black naturalized U.S. citizen originally from Sudan.  He worked at all relevant times as an information technology professional at Bunker Hill Community College (Bunker Hill) and was also an Uber driver.  On July 18, 2017, he was driving through Boston on his way to Bunker Hill when he encountered a double-parked vehicle blocking the right lane beside him on a busy one-way street.  (¶¶ 10-12).  Osman gave room for one vehicle (on the right) to merge into his lane, but as he started to move ahead afterwards, a blue Ford Explorer in the blocked lane, driven by off-duty BPD Detective Dwan, attempted to force its way into Osman's lane.  To avoid an accident, Osman moved his car as far to the left as possible.  As Detective Dwan continued to merge, however, his vehicle clipped Osman's passenger-side mirror. (¶¶ 13-14).

Both drivers proceeded forward and Detective Dwan waited for Osman at a traffic light several hundred feet later.  When Osman pulled up, Detective Dwan lowered his window but did not identify himself as a police officer.  When he saw that Osman is Black, he

2

became confrontational.  He said to Osman, "You stupid?"  Osman replied, "You are the one who is stupid.  You hit me."  Detective Dwan replied, "You stupid.  What you got?  Show me what you got." Osman replied sarcastically, "Show me what you got?"  (¶¶ 15-17).

The traffic light turned green at this point and Osman proceeded onto Interstate 93, still headed to Bunker Hill. Detective Dwan followed him and called Lieutenant O'Hara, the BPD Area A1 supervisor.  Lieutenant O'Hara in turn called BPD Officer Gleeson.  Thereafter, and at Detective Dwan's request, a BPD officer who was with several other officers, including Officer Gleeson, stopped Osman after he exited Interstate 93 near Bunker Hill.  At gunpoint, officers ordered Osman to exit his vehicle. When he did so he was placed in handcuffs and thrown to the ground. (¶¶ 18-20).

Officers then searched Osman and his vehicle.  After finding no weapons or any other incriminating items, Osman was uncuffed and allowed to stand.  Detective Dwan, who had appeared at some point, approached Osman and asked him what he wanted to show Detective Dwan.  Osman replied that, based on their earlier encounter, it was evident that Detective Dwan was looking for a fight.  (¶¶ 22-23).

Osman asked Detective Dwan for his information but he refused and would not identify himself as a police officer, saying instead that Osman would receive his information with a ticket.  Osman

asked what the basis for the ticket would be but Detective Dwan did not reply.  (¶ 24).

In the following days, Detective Dwan filed a police report to the effect that Osman was trying to pass him illegally, and that he believed Osman was armed with a firearm.  Osman subsequently received a citation for negligent operation of his vehicle, lane violations and improper passing.  (¶¶ 25-26).

As the matter proceeded to trial, video evidence reportedly showing Detective Dwan's report to be materially false was withheld until the day of Osman's trial. (¶¶ 27-28).  The trial was continued so the video could be reviewed; the Commonwealth chose to continue to prosecute the case despite the video.  (¶¶ 28-29).  After several continuances based on Detective Dwan's purported unavailability, the charges were dismissed when a firm trial date was set and Detective Dwan did not appear.  (¶¶ 30-31).  Osman subsequently lost his job as an Uber driver because of the charges. (¶ 32).

## II.  **THE COMPLAINT**

The complaint asserts a total of 10 claims.  It asserts five substantive claims against the three BPD officers:  assault (Count I); common law malicious prosecution (Count II); a violation of civil rights under 42 U.S.C. § 1983 (Count III); intentional and

negligent infliction of emotional distress (Counts VI and VII);[2] one substantive claim against all the defendants, for a violation of the Massachusetts Civil Rights Act (Count VIII); two substantive claims against the City, for violation of Osman's civil rights under 42 U.S.C. § 1983 (Count IV) and negligence under M.G.L. c. 258 § 4 (Count V); and two conspiracy claims against the officers, for common law malicious prosecution (Count IX) and a violation of the plaintiff's civil rights (Count X).

III. **LEGAL STANDARD**

In reviewing a Rule 12(b)(6) motion to dismiss, a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). To survive such a motion, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted).

---

[2] The complaint also asserts Counts I, III, VI, VIII, IX and X against the unnamed officers. As noted previously, the court does not address the propriety of any claims with respect to these defendants where they have neither been served nor sought relief.

The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

## IV.  DISCUSSION

### A. Substantive Claims Against The Three Named Officers

#### *Count I - Assault*

Count I alleges assault. Under Massachusetts law, an assault occurs where one acts "with the intention of causing 'a harmful or offensive contact with the person of another . . ., or an imminent apprehension of such a contact" if 'the other is thereby put in such imminent apprehension.'" *Guzman v. Pring-Wilson*, 81 Mass. App. Ct. 430, 434 (2012) (quoting Restatement (Second) of Torts § 21(1) (1965)). Officer Gleeson does not move to dismiss Count I and Osman does not oppose dismissal of the claim against Lieutenant

O'Hara.  Regarding Detective Dwan, Osman contends that he committed assault because he allegedly directed others to stop and search Osman with the intent of inflicting harm upon him.

In moving to dismiss, Detective Dwan argues that the claim fails against him because he personally did not order Osman out of his vehicle at gunpoint and there are no allegations to suggest that Osman was ever in immediate physical harm from Detective Dwan. However, Detective Dwan may still be found liable for assault even if this is true, because actual participation is not necessary to establish liability.  Rather, "a plaintiff may hold liable one who intentionally induces another to commit any tortious act that results in damages to the plaintiff." *Alberts v. Devine*, 395 Mass. 59, 71 (1985).  Osman alleges that officers acted "at the direction" of Detective Dwan when they reportedly held him at gunpoint, handcuffed him and threw him to the ground.  It remains to be seen whether the evidence supports this contention, but the complaint at a minimum pleads facts allowing one to infer that officers reacted as they did based on information provided by Detective Dwan.  That is sufficient to withstand a motion to dismiss, because "instruct[ing] the use of excessive force . . . provides a potential ground for liability." *Maraj v. Commonwealth*, 836 F. Supp. 2d 17, 32 (D. Mass. 2011) (denying motion to dismiss where plaintiff alleged officer had told other officers to use

excessive force).  Detective Dwan's motion with respect to Count I therefore should be denied.

### Count II – Common Law Malicious Prosecution

Count II alleges common law malicious prosecution.  "The essence of the tort of malicious prosecution is 'interference with the right to be free from unjustifiable litigation.'" *Chervin v. Travelers Ins. Co.*, 448 Mass. 95, 102 (2006) (quoting *Foley v. Polaroid Corp.*, 381 Mass. 545, 552 (1980)).  To prevail, a plaintiff must show that (1) he suffered damages because the defendant commenced an action without probable cause, (2) for an improper purpose, and (3) that the original action terminated in the plaintiff's favor. *Billings v. Commerce Ins. Co.*, 458 Mass. 194, 196-97 (2010).

All three officers move to dismiss Count II.  Osman does not oppose dismissal of the claim against Officer Gleeson so the claim may be dismissed against him without further consideration.

With respect to Lieutenant O'Hara, Count II should be dismissed against him because, even taking all the specific factual allegations against him as true, the complaint fails to allege facts suggesting that he played any role in either drafting a false police report or initiating or participating in criminal proceedings against Osman.  To be sure, the complaint alleges amorphously that the "defendants" "commenced" a baseless criminal proceeding against Osman, and then allowed the prosecution to

"continue" by "withholding material and exculpatory evidence," but these vague and all-inclusive assertions fail to articulate what actions Lieutenant O'Hara specifically took in causing charges to be brought or evidence to be withheld so the prosecution could continue. Without more, the allegations are simply too vague and conclusory to warrant reliance, even at the motion to dismiss stage. *See Twombly*, 550 U.S. at 555 (complaint must offer more than labels and conclusions to show entitlement to relief); *see also Diaz-Colon v. Toleda-Davila*, 922 F. Supp. 2d 189, 202-03 (D.P.R. 2013) (malicious prosecution claim failed under Rule 12(b)(6) where complaint alleged generally that defendants withheld exculpatory evidence but failed to plead specific facts explaining defendant's role or suggesting that defendant acted with malice).

By contrast, the court finds that Count II does adequately allege a viable malicious prosecution claim against Detective Dwan. The complaint pleads all of the requisite elements where it alleges (1) that he caused a baseless prosecution to be commenced against Osman by drafting a false police report, to Osman's personal and financial detriment; (2) that he did so because of an improper personal or racial animus; and (3) that the prosecution terminated in Osman's favor when the state court dismissed the

case after Detective Dwan failed to appear for trial.[3]  The motion
to dismiss Count II should therefore be denied as it relates to
Detective Dwan.

### _Count III – Violation of Civil Rights — 42 U.S.C. § 1983_

Count III alleges a violation of civil rights under 42 U.S.C.
§ 1983.  Section 1983 "is not itself a source of substantive
rights, but merely provides a method for vindicating federal rights
elsewhere conferred."  _Graham v. Connor_, 490 U.S. 386, 393-94
(1989).  To prevail under section 1983, a plaintiff must show that
the defendants (1) acted under "color of state law," and (2)
"deprived [the] plaintiff of a right secured by the Constitution

---

[3] It remains to be determined whether the state prosecution truly terminated in
Osman's favor for purposes of this last element.  The complaint avers that the
criminal case was dismissed not because Osman was innocent, although that is
certainly the inference he seeks to have drawn, but rather because Detective
Dwan failed to appear for trial.  This distinction potentially matters because
some courts have held that a dismissal or _nolle prosequi_ of a criminal action
based on a procedural or technical defect is insufficient to serve as a
termination in the criminal defendant's favor, _see, e.g._, _Wynne v. Rosen_, 392
Mass. 797, 801 (1984), _cited by Schand v. City of Springfield_, 380 F. Supp. 3d
106, 137 (D. Mass. 2019), and that "the reasons stated for the _nolle prosequi_ or
dismissal [must be] consistent with the innocence of the accused."  _Id._ at 800-
01.  A court may look beyond the text of a dismissal or _nolle prosequi_ to
determine whether an action terminated in the plaintiff's favor, but a malicious
prosecution claim may proceed only if the "circumstances of the abandonment"
suggest that there existed a lack of reasonable grounds to pursue the
prosecution.  _Johnson v. Charbonnier_, 2015 WL 8215892, at *6 (D. Mass. Dec. 8,
2015) (citing _Wynne_, 392 Mass. at 801).  As no discovery has yet been conducted
in the case, it is not clear whether Detective Dwan's failure to appear for
trial had anything to do with the merits of the case against Osman.  Although
Osman suggests that the dismissal was indeed tied to the existence of
exculpatory evidence, the complaint avers somewhat contradictorily that the
Commonwealth remained ready to proceed even after the evidence was brought to
light.  The merits of this claim will be able to be better assessed after
discovery.

or the laws of the United States." *Budnick v. Baybanks, Inc.*, 921 F. Supp. 30, 32 (D. Mass. 1996).

Although labeled as a single count, Count III advances two separate civil rights claims. It alleges (1) that the defendants violated Osman's "Fourth Amendment right to be free from unlawful seizure" based on the allegedly baseless car stop and use of excessive force, and (2) violated his "Fifth and Fourteenth Amendment rights to due process of law" based on the alleged malicious prosecution. All three officers move to dismiss Count III. As discussed, Count III does plead a valid Fourth Amendment claim against all three defendants arising from the car stop, but fails to plead a malicious prosecution due process claim.

### The Fourth Amendment § 1983 claim

As noted, Count III alleges in part that the defendants violated Osman's Fourth Amendment rights in effecting a baseless car stop. For whatever reason, the defendants do not address this portion of Osman's § 1983 claim in their briefs. Consequently, the court does not address the merits of this portion of Count III and it thus is not implicated or affected by any of the motions to dismiss.[4]

---

[4] Even assuming a challenge had been raised, the court would be inclined to find that this portion of Count III sufficiently pleads a § 1983 claim against Officer Gleeson and Detective Dwan at least, because it alleges that Officer Gleeson personally participated in a baseless stop and moreover subjected Osman to excessive force and did both at Detective Dwan's direction. *See Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009) (section 1983 also "imposes liability upon those who 'subject[ ] or cause[ ]

### The Malicious Prosecution § 1983 Claim

Osman also contends that the defendants effected a malicious prosecution that violated his "Fifth and Fourteenth Amendment rights to due process of law."   All three defendants move to dismiss this portion of Count III.   The court agrees that this portion of Count III fails to state a valid claim against any defendant and should be dismissed.

First, although Osman frames his § 1983 malicious prosecution claim as a Fifth and/or Fourteenth "due process" claim, a malicious prosecution does not support a claim of a procedural or substantive due process violation.  *See Nieves v. McSweeney*, 241 F.3d 46, 53-54 (1st Cir. 2001).   This is not necessarily fatal to Osman's claim, however, because the First Circuit has clarified that a § 1983 malicious prosecution claim may flow from the Fourth Amendment's guarantee of the right to be free from an unlawful seizure.  *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 98-99 (1st Cir. 2013).   But even treating this portion of Count III as properly invoking the Fourth Amendment, it fails to plead sufficient facts to make out a § 1983 malicious prosecution claim.

---

to be subjected'" any citizen to a deprivation of a constitutional right). It is a much closer call whether Count III pleads a viable claim against Lieutenant O'Hara.  The complaint does allege that he was acting at Detective Dwan's direction, but it pleads no non-conclusory facts to suggest he knew there was no basis to effect a car stop.  Discovery will reveal whether there is evidence to support this claim against any defendant.

Under § 1983, a malicious prosecution permits damages only where the plaintiff suffers a deprivation of liberty, *i.e.,* a seizure, that comes about as a result of legal process. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). Generally, the offending legal process underlying a malicious prosecution claim begins with either the execution of an arrest warrant or a subsequent charging document; a warrantless arrest is insufficient to constitute the initiation of proceedings or to form a part of the Fourth Amendment seizure upon which a § 1983 malicious prosecution claim may be premised. *Nieves*, 241 F.3d at 54. Here, where the claimed malicious prosecution flows from charges brought after the (warrantless) car stop, Osman must show that the charges themselves led subsequently to a deprivation of some Fourth Amendment liberty interest, *i.e.,* that he suffered a deprivation of his liberty *after* criminal proceedings were initiated against him, through substantive restrictions such as pretrial detention, the imposition of a bond, pretrial reporting obligations, travel restrictions or some other meaningful limitation placed on his liberty. *Id.* at 54-57 (stress and humiliation from pending criminal charges along with obligation to appear in court several times during course of prosecution insufficient to amount to deprivation of liberty interest for purposes of section 1983 malicious prosecution claim); *Harrington v. City of Nashua*, 610 F.3d 24, 32 (1st Cir. 2010) (standard "run of the mill" conditions

of release, loss of employment and reputational harm deemed insufficient to collectively amount to seizure/deprivation of liberty interest for purposes of section 1983 malicious prosecution claim).

Here, the complaint fails to allege that Osman was subjected to any procedures or conditions after charges were brought that meaningfully limited his liberty and, if anything, it suggests that he was not where he at most only needed to appear in court for scheduled proceedings. Osman thus cannot show that he suffered a liberty deprivation as a result of the prosecution. As a result, this portion of Count III fails to state a valid § 1983 malicious prosecution claim and should be dismissed.

### *Count VI – Intentional Infliction of Emotional Distress*

Count VI alleges intentional infliction of emotional distress. To prevail under Massachusetts law a plaintiff must show "(1) that [the defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Bettencourt v. Town of Mendon*, 334 F. Supp. 3d 468, 487 (D. Mass. 2018).

Detective Dwan and Lieutenant O'Hara move to dismiss this claim; Officer Gleeson does not. With respect to Detective Dwan, the court finds that Count VI states a valid claim for intentional

infliction of emotional distress.    Notwithstanding Detective Dwan's assertion that the complaint makes only cursory allegations against him in this regard, it alleges that he, (1) knowing his actions would cause emotional distress, (2) engaged in extreme conduct by intentionally effecting both an unlawful vehicle stop involving the use of excessive force and a subsequent long-running prosecution because of personal or racial animus, and (3-4) thereby caused Osman to suffer severe emotional stress.   Assuming the evidence were to show that Detective Dwan used his position to order that Osman be stopped, searched and charged based on a personal animus, these allegations reasonably could permit an inference of reckless or outrageous conduct.

With respect to Lieutenant O'Hara, however, the complaint alleges only that he conveyed Detective Dwan's directive to Officer Gleeson and/or others to effect the vehicle stop.   It otherwise pleads no specific facts alleging that he played a role in either the use of excessive force against Osman or in commencing or prolonging the state prosecution.   Without more, the complaint fails to allege sufficient non-conclusory facts to show Lieutenant O'Hara either intended to inflict emotional distress upon Osman or engaged in conduct so reckless or outrageous that he should have known it might cause severe emotional distress.   Count VI therefore should be dismissed against Lieutenant O'Hara.

### *Count VII – Negligent Infliction of Emotional Distress*

Count VII alleges negligent infliction of emotional distress. Osman does not oppose dismissal of this claim as to all defendants so Count VII should accordingly be dismissed.

**B. Substantive Claims Against All Named Defendants**

### *Count VIII – Violation of the MCRA*

Count VIII alleges that the City and the BPD officers interfered with the plaintiff's exercise and enjoyment of his civil rights in violation of the Massachusetts Civil Rights Act (MCRA), M.G.L. c. 12, §11(1). To prove a MCRA violation, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts has been interfered with, or attempted to be interfered with, and (2) that the interference or attempted interference was by threats, intimidation, or coercion. *Barbosa v. Conlon*, 962 F. Supp. 2d 316, 331–32 (D. Mass. 2013) (internal quotations and citations omitted).

The purpose of the MCRA is to provide a state law remedy coextensive with 42 U.S.C. § 1983, except that a MCRA plaintiff (1) does not have to show any state action, but (2) does have to show the violation was achieved by threats, intimidation, or coercion. *Kelly v. LaForce*, 288 F.3d 1, 10 (1st. Cir. 2002). "A 'threat' means the 'intentional exertion of pressure to make

16

another fearful or apprehensive of injury or harm.'" *Goddard v. Kelley,* 629 F. Supp. 2d 115, 128 (D. Mass. 2009) (quoting *Planned Parenthood League of Mass., Inc. v. Blake,* 417 Mass. 467, 474 (1994)).  "Intimidation" means putting a person in fear for the purpose of compelling or deterring his or her conduct. *Id.* "Coercion" means applying physical or moral force upon another to compel him to do against his will something he would not otherwise do.  *Id.*

Accordingly, liability may be found under the MCRA where (1) the defendant threatens, intimidates, or coerces the plaintiff to (2) cause the plaintiff to do something not lawfully required or to refrain from the exercise of a right.  *Id.*  As this construct suggests, a plaintiff cannot rely on the same conduct to show both the right that was interfered with and the threats, coercion, or intimidation.  *Santiago v. Keyes*, 890 F. Supp. 2d 149, 159 (D. Mass. 2012).  Rather, he must show that the person(s) threatened, coerced or intimidated him in order to prevent him from doing something he was lawfully entitled to do or to force him to do something he was not lawfully required to do.  *Farrah ex rel. Estate of Santana v. Gondella*, 725 F. Supp. 2d 238, 247-248 (D. Mass. 2010).

The complaint here does not specify how the defendants threatened, coerced or intimidated him but Osman elaborates in his opposition that officers "coerced and intimidated" him by

effecting a baseless and excessively violent car stop followed by the bringing of baseless charges, and then "continued" to coerce and intimidate him after charges were brought by withholding exculpatory evidence, in order to force him to "capitulate."  As such, and stated more simply, Osman alleges that the defendants stopped and used excessive force on him to force him to plead guilty to baseless charges.  The court finds that this allegation fails to plead a valid MCRA claim against either the City or any individual defendant.

Although the complaint pleads both a viable § 1983 violation of Osman's Fourth Amendment right to be free from an unreasonable stop and seizure (Count III), and a valid common law malicious prosecution (Count II), nowhere for MCRA purposes does it allege or plead facts to show that the unlawful stop and malicious prosecution were intended to coerce and intimidate Osman into refraining from the exercise of some other right or privilege secured by law.  Osman argues that they were done to coerce or intimidate him to plead guilty to baseless charges but this theory is simply not plausible where the complaint pleads no facts to suggest that the defendants who stopped Osman did so in order to get him to plead guilty to a prosecution that had not yet materialized, based on charges that had not yet even been brought, and did so moreover by subsequently withholding exculpatory evidence.  This theory, already strained to the point of

incredulity, is only weakened further by the complaint's acknowledgment that the Commonwealth continued to prosecute the case even after the reportedly exculpatory information was disclosed.  In sum, the complaint does not make out a valid MCRA claim.  Count VIII therefore should be dismissed.[5]

### C. Conspiracy Claims Against The Officers

#### Count IX – Conspiracy to Commit Malicious Prosecution

Following on Count II's claim for common law malicious prosecution, Count IX alleges that the three named officers (and other unnamed officers) conspired to maliciously prosecute Osman. All three defendants move to dismiss.  Osman does not object to dismissal of Count IX against Officer Gleeson so the claim may and should be dismissed as to him.

The court finds that Count IX should also be dismissed against Detective Dwan and Lieutenant O'Hara.  To show a conspiracy, a plaintiff must prove that "a combination of two or more persons

---

[5] Independently, Count VIII fails against the City because the MCRA applies only to "persons" who violate the civil rights of others.  Both state and federal courts have held consistently that MCRA claims brought against municipalities are subject to dismissal because they are not persons within the meaning of the statute.  *See e.g., Edwards v. City of Boston*, 90 Mass. App. Ct. 1119 (2016); *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 591-92 (2001); *Syrjala v. Town of Grafton*, 2020 WL 1429854, at * 8 (D. Mass. Mar. 24, 2020); *Arias v. City of Everett*, 2019 WL 6528894, at *15 (D. Mass. Dec. 4, 2019); *Lucien-Calixte v. David*, 405 F. Supp. 3d 171, 180 (D. Mass. 2019).  To be sure, the court is mindful that while the Massachusetts Appeals Court has addressed this issue, the Massachusetts SJC has not definitively addressed whether the MCRA applies to municipalities.  *See Am. Lithuanian Naturalization Club v. Bd. of Health of Athol*, 446 Mass. 310, 325-26 (2006). That uncertainty does not warrant further attention here, though, where the court concludes that the complaint fails regardless to state a valid MCRA claim against any defendant.

act[ed] in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Diaz v. Devlin*, 229 F. Supp. 3d 101, 111 (D. Mass. 2017).  As discussed above, Count II states a valid malicious prosecution claim against Detective Dwan but fails to plead a substantive claim against Lieutenant O'Hara (or any other officer) because it fails to allege any specific, non-conclusory facts to suggest that any other officer acted in concert with Detective Dwan in order to initiate baseless proceedings against Osman or to withhold evidence showing that Detective Dwan's "police report and charges were materially false" so that the prosecution could continue.  It follows that the plaintiff cannot show the existence of a conspiracy and Count IX therefore should be dismissed against all defendants.

### Count X – Conspiracy to Violate Civil Rights

Count X alleges in catch-all fashion that officers conspired to violate the plaintiff's civil rights under (1) 42 U.S.C. § 1983, (2) 42 U.S.C. § 1985, and (3) the MCRA.  As noted above, a conspiracy is a "combination of two or more persons acting in concert to commit an unlawful act." *See Alston v. Spiegel*, 988 F.3d 564, 577 (1st. Cir. 2021).  "A civil rights conspiracy, though, must have certain other features." *Id*.  To plead such a conspiracy, a plaintiff must plausibly allege facts indicating an

agreement among the conspirators to deprive the plaintiff of his civil rights. *Id.* at 577-78; *Parker v. Landry,* 935 F.3d 9, 18 (1st Cir. 2019). And of particular pertinence here, when direct evidence of such an agreement is unavailable, "the plaintiff must plead plausible factual allegations sufficient to support a reasonable inference that such an agreement was made." *Alston*, 988 F.3d at 578. The court finds that Count X fails to plead a valid conspiracy claim against any defendant.

### Conspiracy to Violate § 1983

To make out an actionable conspiracy under § 1983, a plaintiff must prove a conspiratorial agreement as well as an actual abridgment of some federally secured right. *Nieves*, 241 F.3d at 53. Osman contends in Count III, his substantive section 1983 claim against the officers, that the abridged federal right is the "Fourth Amendment right to be free from unlawful seizure," based on the car stop and reported use of excessive force. The defendants did not address the merits of the underlying § 1983 claim in conjunction with Count III but they do argue that the complaint is too conclusory and bereft of specific facts to show the existence of a conspiracy. The court agrees.

The complaint alleges that Detective Dwan became angry with Osman for two reasons, because Osman is Black, and because Osman called him "stupid." It alleges that Detective Dwan, in retaliation, then phoned Lieutenant O'Hara to arrange for officers

to stop and apprehend Osman.  Implicit in this claim is the allegation that Detective Dwan conveyed his personal and/or racial animus towards Osman to Lieutenant O'Hara, and Lieutenant O'Hara in turn conveyed that animus to Officer Gleeson and others.  This is where Osman's claim fails.  Even assuming *arguendo* that Detective Dwan bore some personal or racial animus towards Osman, the complaint fails to plead any plausible facts suggesting that Detective Dwan conveyed this animus to Lieutenant O'Hara, and/or that the animus formed the impetus for the subsequent car stop. Indeed, the complaint itself suggests that the officers might have plausibly just been told that Osman had committed a number of motor vehicle infractions, or possibly possessed a firearm, either of which would justify a motor vehicle stop.  As such, the complaint fails to plead specific non-conclusory facts showing a conspiracy to violate the plaintiff's Fourth Amendment rights.

### Conspiracy to Violate § 1985(3)

To state a claim under § 1985(3), a plaintiff must allege (1) a conspiracy, (2) to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.  *Aulson v. Blanchard*, 83 F.3d 1, 3

(1st Cir. 1996) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

For the same reasons noted in connection with Osman's § 1983 conspiracy claim, the § 1985(3) conspiracy claim fails to state a claim because the complaint fails to plead any plausible facts that would allow one to infer that officers decided to stop Osman because of his race.  Beyond Osman's allegation that Detective Dwan became "belligerent" when he saw that Osman is Black, the complaint does not assert any non-conclusory facts to suggest Detective Dwan bore a racial animus towards the plaintiff or, assuming he did, that he conveyed that racial animus to Lieutenant O'Hara or others who effected the stop.  There are no allegations, for example, that Detective Dwan used racially charged language in dealing with Osman, or ever mentioned Osman's race in contacting Lieutenant O'Hara by cell phone to request that Osman be stopped. In this regard, the complaint's allegation that Lieutenant O'Hara and Officer Gleeson were acting "at the direction of Detective Dwan" has no force where there is no basis to infer that Dwan was acting with a racial animus in the first instance.

### Conspiracy to Violate MCRA

Count X fails to plead a valid MCRA conspiracy claim for two reasons.  First, as with Osman's § 1983 conspiracy claim, it fails because the complaint fails to allege non-conclusory facts showing the existence of an agreement to deprive the plaintiff of a right.

Second, it would fail in any event where the court has already found that Count VIII fails to plead a valid substantive MCRA claim against any defendant.

D. **Substantive Claims Against The City**

*Count IV – Violation Under 42 U.S.C. § 1983*

In Count IV of his complaint, Osman seeks to hold the City liable under 42 U.S.C. § 1983 for violations of his constitutional rights arising out of the alleged baseless car stop and subsequent use of excessive force.  Osman contends that the City had a custom or policy of singling out individuals of color for street and other investigations, and contends further that this policy was "consistent with inadequate and negligent training," and was able to continue because the City failed to "put into place adequate training, supervision or discipline to change this practice and custom."

To hold the City liable under 42 U.S.C. § 1983, Osman must show the existence of (1) an unconstitutional "policy or custom" of the City, and (2) that this policy or custom was "the moving force" behind his alleged injury.  *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-405 (1997).  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  Here, the complaint appears to

assert four related claims, the principal one being that the (1) the BPD has a policy or custom of singling out people of color for "street and other investigations."  The complaint further alleges that the City, consistent with this policy, has failed to adequately (2) train, (3) supervise or (4) discipline its officers, and that these policies or customs or failures led to Osman's maltreatment.

The City argues that Count IV should be dismissed because Osman has failed to allege sufficient facts to support a claim of municipal liability.  As discussed below, this court agrees that the conclusory allegations of wrongdoing on the part of the City are insufficient to state a claim for relief.

### Racial Profiling

With respect to Osman's principal claim of a BPD racial profiling policy, the complaint alleges that his treatment was the result of long-standing "personal biases, retribution, and racial motivations."  In support, he contends that a "recent internal report of the [BPD]" documents its practice of singling out individuals of color for disparate negative treatment.  In the court's view, these assertions are too vague and conclusory to show that the City had a custom or policy of racial profiling.  To be sure, the complaint refers to a "recent" "internal" BPD report, but Osman notably has not appended the report to his complaint or offered any specific pertinent information about it.

Consequently, the complaint fails to identify the report or indicate who drafted it or when, what issues it purported to address, what conclusions if any it reached with respect to a practice or policy of profiling, and whether any changes in policy were warranted or proposed as a result. Moreover, Osman, in his opposition, repeats his contention that the City has a practice of profiling, but he conspicuously eschews any mention of a BPD internal report, referring instead for the first time to what appears to be a 2014 Time magazine article discussing an ACLU report purportedly showing a racial bias in stops and searches by BPD officers.

It is not clear in light of this observation whether Osman continues to allege or no longer alleges the existence of a damaging internal BPD report. Even assuming he does, the complaint simply fails to allege specific facts from which one could reasonably infer the existence of a BPD racial profiling policy. To conclude otherwise on these vague allegations would be to permit every plaintiff to bring a municipality into the ambit of civil rights liability any time an officer stopped a person in a protected group. The court thus finds that the complaint fails to state a racial profiling claim against the City.

**Failure to Train**

Osman also alleges that the City should be held liable for the failure to train its officers. To the extent this claim

depends in the first instance on showing that the BPD had a policy or custom of racial profiling, it fails for the reasons noted above. Regardless, "the liability criteria for 'failure to train' claims are exceptionally stringent," *see Hayden v. Grayson*, 134 F.3d 449, 456 (1st Cir. 1998), and a municipality can be held liable under a failure to train theory only if the failure constitutes "deliberate indifference to the rights of the persons with whom the police came into contact, and is closely related to . . . the constitutional injury." *Id.* Consequently, a complaint must allege "'a sufficient basis for concluding that [City] policymakers reasonably should have anticipated that [the] police would need specialized instruction' in the activity." *Miller v. City of Boston*, 586 F. Supp. 2d 5, 8 (D. Mass. 2008) (quoting *Hayden*, 134 F.3d at 457).

The complaint here falls short of meeting these requirements. In addition to Osman's failure as noted above to credibly identify a specific policy that caused the violations in question, the complaint does not allege any specific non-conclusory facts describing the substance of the City's training program or identifying any particular deficiencies in that program. The complaint also fails to allege any facts to show that the City was deliberately indifferent to Osman's rights. Normally, in failure to train cases a municipality's disregard of a known or obvious risk is established by showing a pattern of similar violations by

untrained employees.  *Sonia v. Town of Brookline*, 914 F. Supp. 2d 36, 44 (D. Mass. 2012).  Here, while Osman generally claims the existence of an internal report suggesting that persons of color are singled out for disparate treatment, there are no specific allegations regarding complaints against officers, the nature of such complaints, or which officers have been implicated in complaints.  Instead, Osman's allegations concern only the single incident involving him, which is insufficient to show a failure to train.  *See Oaplenik v. LaBrie*, 945 F. Supp. 2d 168 (D. Mass. 2013) (even where internal study showed a lack of sergeant supervision on approximately 450 shifts per year, plaintiff failed to allege a viable failure to train because he did not demonstrate a link between the inadequacy identified in the study and the events of his case).

Finally, even if Osman had alleged a failure to train which led to his treatment, he has not alleged any facts showing that the City had reason to know that the specific officers involved in the incident posed a risk to the community.  *See Miller*, 586 F. Supp. 2d at 8 (dismissing failure to train claim where plaintiff failed to allege that municipality had reason to know that officers involved in alleged unconstitutional conduct posed a risk).  "Absent more specific allegations of an egregious failure on the part of the City to train the . . . officers, [the complaint] is insufficient to state a claim for municipal liability" based on

such a theory.  *Id.*  The court finds that Count IV therefore fails
to state a valid claim for failure to train.

### Failure to Supervise and Discipline

Finally, and for essentially the same reasons, the court
finds that the complaint lacks sufficient facts to support a
claim of municipal liability based on the City's alleged failure
to supervise or discipline its police officers.  In order to
establish liability under such theories, a plaintiff must show a
persistent failure to supervise, investigate or discipline that
demonstrates the existence of a City custom or policy.  *Barker
v. City of Boston*, 795 F. Supp. 2d 117, 124 (D. Mass. 2011).
Here, the plaintiff has described no specific incidents, other
than the one involving his own treatment, in which the City
allegedly failed to supervise, investigate, or discipline police
officers who had been accused of misconduct.  As a general rule,
"[w]hile the existence of a municipal custom may be evidenced by
the repetition of unlawful acts by officers, a single instance
of police misconduct in the field, standing alone, is
insufficient to establish the endorsement of an informal policy
or custom by the City."  *McElroy v. City of Lowell*, 741 F. Supp.
2d 349, 354 (D. Mass. 2010); *see also Barker*, 795 F. Supp. 2d at
124 ("A single failure to discipline is not sufficient to
establish municipal liability").

In sum, Count IV fails to state a claim for municipal liability under section 1983.

### *Count V – Negligence*

Count V alleges a claim of negligence against the City under M.G.L. c. 258, § 4 for the actions of its officers.  Osman assents to dismissal of this claim and it therefore should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, I recommend as follows:

(1)  The City of Boston's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (D. 12) should be ALLOWED and the complaint against the City should be dismissed.

(2)  William Dwan's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (D. 14) should be ALLOWED in part and DENIED in part.  The motion should be allowed with respect to Counts V, VII, VIII, IX and X, but denied with respect to Counts I, II and VI.  Count III should also be dismissed, but only to the extent it alleges a § 1983 malicious prosecution.  If adopted as recommended, the complaint will continue to assert Counts I, II, III and VI against defendant Dwan.

(3) Edward Gleeson's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (D. 16) should be ALLOWED in part and DENIED in part.  The motion should be

allowed with respect to Counts II, V, VII, VIII, IX and X. Count III should also be dismissed, but only to the extent it alleges a section 1983 malicious prosecution.  If adopted as recommended, the complaint will continue to assert Counts I, III, and VI against defendant Gleeson.

(4) Michael O'Hara's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (D. 18) should be ALLOWED in part and DENIED in part.  The motion should be allowed with respect to Counts I, II, V, VI, VII, VIII, IX and X.  Count III should also be dismissed, but only to the extent it alleges a section 1983 malicious prosecution.  If adopted as recommended, the complaint will continue to assert Count III against Lieutenant O'Hara.[6]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: July 30, 2021

---

[6]The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).